UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RICHARD FISHER,**

    **Plaintiff,**

    v.                                       Civil Case No. 09-1910 (RJL)

**ISAAC FULWOOD, JR.,** *et al.*,

    **Defendants.**

## MEMORANDUM OPINION
(March 2̲7̲, 2011) [#13]

Plaintiff, a state prisoner currently imprisoned at United States Penitentiary Lee ("USP Lee"), has commenced this action against two commissioners and two employees of the United States Parole Commission ("Commission" or "USPC") under 42 U.S.C. § 1983. Plaintiff alleges that the Commission erred when it calculated his parole-eligibility, or "grid," score either by applying Commission guidelines, implemented in 2000, instead of regulations of the District of Columbia Parole Board, implemented in 1987 and interpreted by policy guidelines implemented in 1991, or by applying the 1987 regulations but not the 1991 guidelines. Framing his claim as one for violation of the Ex Post Facto Clause and Due Process Clause of the Fifth Amendment[1] of the United States

---

[1] While plaintiff purports to also bring his claims under the Due Process Clause of the Fourteenth Amendment, suits against the Federal Government and District of Columbia must be brought under the Fifth and not the Fourteenth Amendment. *See Powers-Bunce v. District of Columbia*, 659 F. Supp. 2d 173, 179 n.6 (D.D.C. 2009) (citations omitted). Any claims brought under the Fourteenth Amendment are, therefore, dismissed.

Constitution, plaintiff seeks a rehearing wherein the Commission applies the 1987 regulations in accordance with the 1991 policy guidelines and reconsiders and reduces his grid score by one point. Plaintiff does not request release on parole, at a specific time or otherwise. Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff is currently serving multiple sentences for second-degree murder, possession of a firearm during a crime of violence, and carrying a pistol without a license, all in violation of various sections of the District of Columbia Code. *Fisher v. United States*, 779 A.2d 348, 350 & n.1 (D.C. 2001); *Inmate Locator*, Fed. Bureau of Prisons, http://www.bop.gov/iloc2/LocateInmate.jsp (search for Register Number 09363-007). The crimes for which plaintiff was convicted were committed in 1994. *Fisher*, 779 A.2d at 350-51.

On August 5, 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11,231, 111 Stat. 251 (1997) ("Revitalization Act"). "The Revitalization Act abolished the D.C. Parole Board and directed the USPC to conduct parole hearings for D.C. Code offenders pursuant to the parole laws and regulations of the District of Columbia." *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008) (internal citations and quotation marks omitted). "Since August 5, 1998, the USPC has conducted the hearings and decided the requests for parole of all persons convicted of violating the D.C. Code. Prior to this date, the D.C. Parole Board

conducted the parole hearings for D.C. Code offenders, applying guidelines . . . published in the District of Columbia Municipal Regulations in 1987" ("1987 regulations"). *Id.* at 68-69 (internal citations omitted); *see also id.* at 69-71 (discussing the 1987 regulations).

In 1991, the District of Columbia supplemented the 1987 regulations with policy guidelines ("1991 guidelines"). *See id.* at 71-72. Defendants explain how the 1987 regulations and 1991 guidelines are applied:

> Under the Parole Board's 1987 and 1991 regulations, the first and primary factor considered was the inmate's degree of risk or Salient Factor Score ("SFS"). [*Sellmon*, 551 F. Supp. 2d at 69-71.] In calculating an inmate's SFS score, the Board considered six pre-incarceration factors: prior convictions and adjudications; prior commitments of more than 30 days; age at commission of current offense; recent commitment-free period; status of prisoner at time of current offense; and history of heroin or opiate dependence. *Id.* These factors put the inmate in one of four risk categories from which the Parole Board derived the inmate's Base Point Score ("BPS")[:] 0 for low risk, 1 for fair risk, 2 for moderate risk, and 3 for high risk. *Id.* The Parole Board would then adjust the BPS using two post-incarceration factors[:] the inmate's institutional adjustment, an aggravating factor[,] and the inmate's program participation. After this adjustment, the Board arrived at the inmate's Total Point Score ("TPS") or grid score. *Id.* A TPS of 0-2 indicated parole "could be granted." Id. at 71. A TPS of 3 resulted in a denial of parole. *Id.* The Board's regulations also indicated that "there occasionally will be unique circumstances that are not taken into account by either the [SFS] but that nonetheless should impact on the release decision." *Id.* In such a case, the Parole Board "could depart from the action indicated by the SFS." *Id.*

Defs.' Mem. of P. & A. in Supp. of Their Mot. Dismiss Pl.'s Compl., at 2 n.1 ("Defs.' Mem.").

"Between 1998 and 2000, the USPC drafted new parole regulations and guidelines . . . that it applied to any offender who received an initial parole hearing after August 5, 1998" ("2000 guidelines"). *Sellmon*, 551 F. Supp. 2d at 72. The 2000

3

guidelines operate similarly to the 1987 regulations, but include greater consideration of factors that were not systematically considered under the 1987 regulations but that would routinely lead to upward departures when, in fact, considered in conjunction with those regulations. *See id.* at 72-73.

Plaintiff alleges that at his initial parole hearing on April 30, 2009, the Commission applied the 2000 guidelines when it should have applied the 1987 regulations and 1991 guidelines. Compl. ¶¶ 25-27. Alternatively, plaintiff alleges that, to the extent that the Commission applied the 1987 regulations, it did so without consideration of the 1991 guidelines. *Id.* ¶¶ 23-24. As a result, the Commission failed to properly consider plaintiff's "program achievements," which plaintiff claims to have accomplished while imprisoned, and therefore assigned plaintiff a grid score of three instead of two. *Id.* ¶¶ 32-33.

Plaintiff thus commenced this suit under 42 U.S.C. § 1983 against Isaac Fulwood, Jr., Chairman, USPC; Patricia Cushwa, Commissioner, USPC; P. Denton, Executive Reviewer, USPC; and Paul R.A. Howard, Hearing Examiner, USPC. *Id.* ¶¶ 6-9. Alleging violations of the Ex Post Facto Clause and Due Process Clause of the Fifth Amendment to the U.S. Constitution, *id.* ¶¶ 40-51, plaintiff seeks a rehearing with reconsideration of his grid score to be derived according to the 1987 regulations and 1991 guidelines, with the result being a grid score of two, *id.* at 14. The Court, therefore, construes the complaint as containing the following claims: (1) application of the 2000 guidelines constituted an unconstitutional ex post facto increase in punishment; (2) application of the 2000 guidelines constituted a violation of plaintiff's Fifth Amendment

due process liberty interest; (3) failure to apply the 1991 guidelines constituted a violation of plaintiff's Fifth Amendment due process liberty interest.

## STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction" over the subject matter of the case. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "Because subject-matter jurisdiction focuses on a court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion to dismiss imposes on a court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Hall v. U.S. Dep't of Educ.*, 680 F. Supp. 2d 45, 46 (D.D.C. 2010) (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 81 n.6 (D.D.C. 2001) (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a district court shall dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although all factual allegations in a complaint are assumed to be true when deciding a Rule 12(b)(6) motion, and all reasonable inferences are drawn in a plaintiff's favor, the Court need not accept either inferences "unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## ANALYSIS

Here, defendants move to dismiss plaintiff's complaint, arguing that: (1) plaintiff's case is, in fact, a petition for the writ of habeas corpus; (2) plaintiff's claims are moot; (3) plaintiff fails to state a claim under the Due Process Clause of the Constitution because there is no liberty interest in parole; (4) plaintiff fails to state a claim under the Ex Post Facto Clause of the Constitution because plaintiff concedes that the 1987 regulations were applied in calculating his grid score; and (5) plaintiff fails to state a claim against the two Commission employees. While this Court agrees that plaintiff has failed to state a claim under the Due Process Clause and against one of the two Commission employees, this Court does not agree with defendants remaining arguments.

First, with respect to plaintiff's due process claims, it is well settled that a District of Columbia prisoner has no due-process liberty interest in parole under the 1987 regulations, because those regulations never *require* parole, regardless of whether a

prisoner's grid score is sufficiently low to *permit* parole. *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Price v. Barry*, 53 F.3d 369, 371 (D.C. Cir. 1995)). In other words, "the regulations vest substantial discretion in the [D.C. Parole] Board to grant or deny parole and [] the regulations lack the sort of 'mandatory character' needed to support a liberty interest." *Id.* at 1419 (quoting *McRae v. Hyman*, 667 A.2d 1356, 1357, 1367 (D.C. 1995)). The 1991 guidelines did not upset this discretion under the 1987 regulations, *see Sellmon*, 551 F. Supp. 2d at 71-72, and the 2000 guidelines vest the USPC with similar discretion, *see id.* at 72-73. Plaintiff therefore has no liberty interest under the Fifth Amendment that can support his claim under § 1983. *See, e.g., Short v. Fulwood*, 742 F. Supp. 133, 136-37 (D.D.C. Oct. 7, 2010) (concluding that the plaintiff had "no due process claim if the commission applies the 'wrong' procedures"). Accordingly, plaintiff's claims under the Fifth Amendment must be dismissed.

Second, defendants argue that plaintiff fails to state a § 1983 claim upon which relief may be granted for alleged ex post facto application of the 2000 guidelines. Defs' Mem. at 1-2. "The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission." *Sellmon*, 551 F. Supp. 2d at 84 (citing U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990)). "It is meant 'to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981)). "The Supreme Court has held that a retroactively applied parole regulation, guideline, or policy statement may violate

the *Ex Post Facto* Clause if it creates 'a significant risk' of 'a longer period of incarceration than under the earlier rule.'" *Id.* (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).

Here, defendants simply argue that "[p]laintiff is not really alleging an *ex post facto* violation" at all. Defs.' Mem. at 1. According to defendants, plaintiff "concedes that [d]efendants applied the Parole Board's 1987 and 1991 regulations" and instead only claims that the Commission applied the 1987 regulations without regard to the 1991 guidelines. *Id.* at 2. Defendants, however, significantly misconstrue plaintiff's complaint. In no way does plaintiff concede that the Commission applied the 1987 regulations. Plaintiff very plainly alleges that his initial parole hearing was conducted "using the Commission['s] 2000 [g]uideline[s]," despite a request, made through plaintiff's attorney, that the "appropriate guidelines ('the 1987 D.C. Parole [r]egulations, as interpreted by the 1991 [p]olicy [g]uideline[s]') be used to determin[e] plaintiff's request for parole." Compl. ¶¶ 17-19.[2] Plaintiff goes on to argue – *in the alternative* – that, to the extent that the 1987 regulations were applied, they were improperly applied

---

[2] In his opposition, plaintiff again makes clear that his is alleging that "defendants violated his [c]onstitutional rights under the Ex Post Facto Clause by applying their own parole procedures and policies"—the 2000 guidelines—"to his case, rather than those of the D.C. Parole Board"—the 1987 regulations and 1991 guidelines—"and significantly increase[s] the risk of a longer period of incarceration." Pl.'s Opp'n at 3. As if it were not crystal clear already, plaintiff once more stresses in his supplemental opposition that he is alleging that the Commission applied the "2000 guidelines, rather than those of the 1987 [r]egulations as interpreted by the 1991 policy guideline[s]." Pl.'s Mem./Br. of P. & A. in Supp. of his Supplement to his Opp'n to the Defs.' Mot. to Dismiss, at 5. Apparently plaintiff's clarity is lost on defendants, who nonetheless reassert in their reply that plaintiff has indeed conceded that "the Commission applied the . . . 1987 regulations." Defs.' Reply at 1.

without reference to the 1991 guidelines. Compl. ¶ 24. It is a basic tenet of civil pleading that "[a] party may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Because plaintiff has not conceded that the 1987 regulations were applied, defendant's argument must fail.[3]

Likewise, defendants arguments that plaintiff's case is, in fact, a petition for the writ of habeas corpus and that plaintiff's claims are moot must also fail. While it is true that a state "prisoner's challenge to the determination of his eligibility for parole [] attacks the 'fact or duration' of confinement" and "therefore, habeas is the sole remedy available to such a prisoner," *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 n.5 (D.C. Cir. 1988) (en banc), claims under "§ 1983 remain[] available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner," *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). Thus, because the relief sought by plaintiff – a lower grid score – does not necessarily result in plaintiff winning parole sooner, or ever, plaintiff need not bring his claim in a habeas petition.

Additionally, the Court disagrees with defendant's argument that plaintiff's claims "no longer present[s] a case or controversy under Article III, § 2, of the Constitution," and are therefore moot. Defs.' Mem. at 7 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7

---

[3] Limiting their argument to the general theory that plaintiff has not really asserted an ex post facto claim at all, defendants do not make any further arguments with respect to that claim specifically. *See* Defs.' Mem. The Court therefore does not further examine whether any such arguments might justify dismissal of this claim under Rule 12(b)(6). *See Bryant v. Carlson*, No. 89-1357, 1993 WL 164795, at *1 (7th Cir. May 17, 1993) ("The court will not research and construct legal arguments for the litigant.").

(1998)). While defendants argue that plaintiff's initial parole hearing *was* conducted according to the 1987 regulations and 1991 guidelines, plaintiff has alleged, and pointed to evidence indicating, that the hearing examiner, in fact, used the Commission's 2000 guidelines. Compl. ¶¶ 19, 26; *see also* Hearing Summary, at 4, *filed as* Compl. Ex. A. (indicating that the worksheets used to calculate plaintiff's parole eligibility, each titled "2.80 Guideline Worksheet," refer to 28 C.F.R. § 2.80—the 2000 guidelines). Because there continues to be a controversy in this case, therefore, plaintiff's claims are not, in fact, moot.[4]

Finally, defendants argue that plaintiff fails to state a § 1983 claim upon which relief may be granted against the two USPC employees, defendant Howard and defendant Denton. Defs.' Mem. at 10. In relevant part, § 1983 provides for recovery against any "person who, under color of any statute . . . of . . . the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "[A]ny Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia" for the purposes of § 1983. *Id.* "Because the D.C. Revitalization Act is such a statute," our Circuit has concluded that "members of the United States Parole Commission are

---

[4] However, this Court does find that a portion of the relief plaintiff has requested is unavailable to him should he succeed on his otherwise well pled ex post facto claim. "Success for [plaintiff] means at most a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term." *Wilkinson*, 544 U.S. at 75. In no event, therefore, can the Court award plaintiff the one-point reduction in grid score that he seeks. *See* Compl. at 14.

amenable to suit under § 1983 for actions taken pursuant to that Act." *Fletcher v. District of Columbia*, 370 F.3d 1223, 1227 (D.C. Cir. 2004) (*"Fletcher I"*), *vacated in part on other grounds*, 391 F.3d 250 (D.C. Cir. 2004); *see also Fletcher v. District of Columbia*, 481 F. Supp. 2d 156, 162-63 (D.D.C. 2007) (*"Fletcher III"*), *vacated in part on other grounds sub nom. Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30 (D.D.C. 2008); *Sellmon*, 551 F. Supp. 2d at 83 n.12.[5]

Under § 1983, the crucial question is whether an employee-defendant was personally involved in the alleged violation of the plaintiff's constitutional rights. *See, e.g., Poppy v. City of Willoughby Hills*, 96 F. App'x 292 (6th Cir. 2004) (affirming dismissal § 1983 claim brought against a mayor for termination of a city council employee in alleged retaliation against the employee's exercise of her First Amendment rights, where authority to terminate rested with the city council, not the mayor); *Dolson v. N.Y. State Thruway Auth.*, 80 F. App'x 694 (2d Cir. 2003) (affirming dismissal of § 1983 claim brought against several of Authority's employees alleging termination of another employee in violation of his rights to due process and equal protection, where defendant-

---

[5] Defendants urge the Court to conclude from the *Fletcher* line of cases that a plaintiff seeking injunctive relief relating to a decision of the Commission under § 1983 may sue only commissioners themselves, not other Commission employees. Defs.' Mem. at 10. The *Fletcher* cases, however, merely stand for the proposition that a plaintiff *may* bring a § 1983 claim for injunctive relief against a commissioner in his official capacity; they do *not* support the further proposition that a plaintiff may *only* bring a claim for such relief against a commissioner. *See Fletcher I*, 370 F.3d at 1227; *Fletcher III*, 481 F. Supp. 2d at 162-63. Section 1983 provides a cause of action against *any person* who violates a plaintiff's constitutional rights while acting under color of state law, and such persons can include employees of the Commission just as well as commissioners themselves. *See generally* 15 Am. Jur. 2d *Civil Rights* § 90.

employees were not personally involved in decision to terminate plaintiff-employee). Indeed, on at least one occasion, a plaintiff has prevailed on a § 1983 claim brought against an ordinary employee of a state parole commission, when that employee was personally involved in the deprivation of the plaintiff's constitutional rights. *Fowler v. Cross*, 635 F.2d 476 (5th Cir. 1981).

In the instant case, plaintiff alleges that defendant Howard conducted his initial parole hearing and refused plaintiff's request to apply the 1987 regulations and 1991 guidelines and instead applied the 2000 guidelines. Compl. ¶¶ 19, 26. Plaintiff thus plainly alleges defendant Howard's personal involvement in the alleged violations.[6] However, as to defendant Denton, plaintiff simply makes no allegations with any specificity to sufficiently state a claim. Plaintiff identifies defendant Denton as an "Executive Reviewer of the United States Parole Commission," *Id.* ¶ 9, and asserts, in the most general way, that he, along with the other defendants, was "responsible for reviewing and acting upon [p]laintiff's requests for parole in accordance with the United States Constitution," but did not so review or act, *id.* ¶ 10. Nowhere does the plaintiff identify defendant Denton as having specifically reviewed plaintiff's application for parole, parole hearing, hearing summary, or notice of action, or as having specifically done anything with regard to the same that violated any clause of the Constitution. *See*

---

[6] Defendants further argue that because "[p]laintiff's only objective is to get the Commission to reconsider his parole suitability, it is not necessary for [d]efendant[] Howard to be [a] part[y] to this action." Defs.' Mem. at 10. Defendant's argument, however, is inapposite. As explained above, the standard for whether a plaintiff has sufficiently stated a claim against a party is not whether that party is indispensible to the litigation. *See* Fed. R. Civ. P. 12(b)(6).

Compl. Further, nowhere does defendant Denton's name appear on any of the documents attached to plaintiff's complaint. *See* Compl. Exs. A-E. Finally, although plaintiff stresses in his opposition that he has "properly su[e]d" defendant Denton in his official capacity for "acts taken . . . upon the plaintiff," plaintiff still does specifically connect defendant Denton to any such acts. Pl.'s Mot. in Opp'n to Defs.' Mot. to Dismiss, and for Summ. J., at 17-18. The Supreme Court, as set forth in *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937, requires a plaintiff to plead specific facts sufficient to show his plausible entitlement to relief. Plaintiff has pled no such facts as to defendant Denton. Plaintiff's claims against defendant Denton are, therefore, dismissed.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS in part and DENIES in part defendants' motion to dismiss. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge